| | | |
|---|---|---|
| KESHAWN HARRIS | * | CIVIL ACTION NO. 19-1012 |
| | * | |
| | * | DIVISION: 1 |
| VERSUS | * | |
| | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| RIVARDE DETENTION CENTER, ET AL. | * | |
| | * | |
| ************************************ | * | |

ORDER AND REASONS

Before the Court is the Motion to Dismiss filed by defendant Jefferson Parish (Rec. Doc. 43). For the following reasons, the Motion is GRANTED in part and DENIED in part.

Background

Keshawn Harris is a female who began working as a detention officer at the Rivarde Detention Center ("Rivarde") in September 2016. Her supervisor was Stanley LeBlanc. Harris alleges she was the victim of a pattern of sexual harassment by LeBlanc. She alleges that he placed her on his lap and grabbed her breasts, made sexual comments and jokes, propositioned money for sexual acts and money to clean his house in the nude, and spread rumors about her sexual orientation and her liking women. She alleges that in October 2016, LeBlanc began making inappropriate sexual jokes and comments about her body parts. She alleges that LeBlanc increased his harassment in June 2017 when they began working the same shift. Harris alleges that on one occasion, LeBlanc overheard her talking to another employee about money, and he put $100 bills in her face and told her he could buy her anything she wanted. She alleges that LeBlanc asked her to come clean his house for money in the nude or in a skimpy maid costume.

Harris asserts that she began having increased panic attacks at work when she was around LeBlanc or knew he was coming to work. She alleges that she had multiple panic attacks at work

and an ambulance had to be called due to the anxiety caused by LeBlanc's harassment. Harris alleges that she notified Assistant Home Supervisor Christopher Bruno of LeBlanc's actions. She alleges that Bruno told her that as long as he had known LeBlanc, "he hasn't harassed women." Harris alleges that no remedial action was taken so she made additional reports to Assistant Supervisor Violet Trulett and Assistant Director Chris Trossclair. Harris alleges that after speaking to Trossclair and Director Roy Junker on December 28, 2017, she was assured that LeBlanc's schedule would be changed and she would have no contact with LeBlanc. She alleges that on December 30, 2017, when she arrived at work, LeBlanc was waiting for her at the time clock and he was the only supervisor on the schedule. Harris alleges she became very scared. She alleges she was constructively discharged on January 17, 2018, after Rivarde took no remedial actions to protect her from LeBlanc.

Harris filed a charge with the Equal Employment Opportunity Commission, and on November 5, 2018, a no cause finding and right to sue letter was mailed to her. She filed this lawsuit on February 6, 2019, originally naming Rivarde and LeBlanc as defendants. Harris seeks declaratory, injunctive, equitable, and monetary relief for the discrimination, harassment, and retaliation she alleges she experienced due to her status as a bisexual female and for making complaints about unlawful discrimination. She purports to assert seven causes of action. Under Title VII of the Civil Rights Act of 1964 and Louisiana's statute prohibiting intentional discrimination in employment (La. Rev. Stat. §23:332(A)), she alleges discrimination by denying her the same terms and conditions of employment as male employees and by subjecting her to a hostile work environment. Under Title VII and La. Rev. Stat. § 23:332(A), she also alleges retaliation, asserting that after she complained of LeBlanc's sexual harassment and discrimination, she was subjected to further acts of discrimination, harassment, and humiliation, and was

constructively discharged on January 17, 2018. In her fifth cause of action, she claims her employer is liable for monetary damages via respondeat superior for LeBlanc's violation of Louisiana's criminal statute for the misdemeanor of sexual battery. She also alleges causes of action for intentional infliction of emotional distress, alleging that LeBlanc knew or should have known that the unwanted bodily contact and sexual advances in the workplace would result in severe emotional distress. She alleges that his conduct was outrageous and extreme and that her employer is liable via respondeat superior because LeBlanc was in the scope of his employment. In her seventh cause of action, she alleges her employer's negligent hiring, retention, and supervision of her co-workers and supervisors by failing to investigate or take appropriate actions in response to her complaints of sexual harassment. Although she does not assert it as a numbered cause of action, her first paragraph also invokes 42 U.S.C. §1981.

Both Rivarde and LeBlanc filed motions to dismiss in April 2019. Harris failed to oppose LeBlanc's motion to dismiss, and it was granted on April 23, 2019. In lieu of opposing Rivarde's motion, in which Rivarde argued it was not a juridical person capable of being sued, Harris attempted to file a Motion for Leave to Amend the Complaint. The proposed pleading asserted the same claims, but replaced defendant Rivarde with Jefferson Parish. Harris filed her Motion for Leave to Amend *ex parte* but failed to represent whether the other parties consented to the filing. Accordingly, in accordance with the local rules, the clerk of court marked the filing deficient. On May 9, 2019, Harris again attempted to file a Motion for Leave to Amend to substitute Jefferson Parish for Rivarde, but the motion was again marked deficient because it was filed *ex parte* without representing whether the other parties consented to the filing. Additionally, the proposed pleading named LeBlanc as a defendant, although Harris's claims against him had been dismissed. On May 10, 2019, the court ordered that Harris refile the Motion for Leave to Amend, but remove LeBlanc

as a party to the proposed pleading and either file the motion as contested or obtain the consent of the defendant. A week later, Harris's counsel moved to withdraw, reporting that he was taking a leave of absence from the practice of law. The court granted the motion to withdraw, enrolled Harris's new counsel Joseph Rome, and extended the deadline to refile the Motion for Leave to Amend to May 24, 2019.

It was not until June 7, 2019, that Harris refiled her motion. Rivarde opposed. Noting that the merits-based arguments raised by Rivarde would be better raised by defendant Jefferson Parish, the court granted Harris's motion for leave to amend on July 18, 2019. However, the court required Harris to file a corrected pleading because although LeBlanc and Rivarde were no longer named as parties in the proposed pleading, the prayer paragraph still requested relief from them instead of Jefferson Parish. At the same time, the court granted Rivarde's motion to dismiss.

Harris failed to file the corrected complaint by the court ordered deadline. The court ordered Harris to appear and show cause why her lawsuit should not be dismissed for failure to prosecute. She then attempted to file the corrected pleading via a Motion for Leave to Amend. The motion was marked deficient by the clerk's office because it displayed the wrong caption. She filed another Motion for Leave to Amend in an attempt to file the corrected pleading, but the prayer paragraph had not been corrected. On September 11, 2019, the court ordered Harris to file the corrected pleading by September 17, 2019.[1] Harris did so via a Motion for Leave to Amend, which the court granted.

On October 23, 2019, Jefferson Parish appeared and filed the present Motion to Dismiss. The Parish argues that Harris has failed to state a claim under 42 U.S.C. §1981, that her Title VII complaints are untimely, that she has failed to state a cognizable disparate treatment claim under

---

[1] Meanwhile, the court ordered Harris's counsel to show cause why he should not be sanctioned for failing to appear as ordered by the court. The court ultimately declined to award sanctions.

Title VII and La. Rev. Stat. §23:332(A)(1), that the alleged sexual harassment does not rise to the level required by law to be severe or pervasive under Title VII, that she cannot establish a claim for constructive discharge under Title VII, that she has failed to state a cognizable retaliation claim under Title VII and La. Rev. Stat. §23:332(A)(2), that she has failed to state a cause of action under a criminal statute alone, that she has failed to sufficiently allege a claim for intentional infliction of emotional distress, and that she fails to sufficiently allege a claim for negligent hiring, retention, and supervision. Harris failed to timely file an opposition, but was granted leave to file her opposition out of time when Jefferson Parish did not oppose the motion.

<u>Law and Analysis</u>

1. *Standard on a Motion to Dismiss*

"[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." <u>Cuvillier v. Taylor</u>, 503 F.3d 397, 401 (5th Cir. 2007) (quotation marks and ellipsis omitted). Accordingly, Rule 12(b)(6) allows a defendant to move for expeditious dismissal when a plaintiff fails to state a claim upon which relief can be granted. In ruling on a 12(b)(6) motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re* <u>Katrina Canal Breaches Litigation</u>, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). Further, "[t]o survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level." <u>Id</u>. (citation, footnote, and quotation marks omitted). On that point, the United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

  2.  *42 U.S.C. §1981*

A claim for sex discrimination is not cognizable under 42 U.S.C. § 1981, which prohibits only racial discrimination in the making and enforcement of private contracts. Bobo v. ITT, Cont'l Baking Co., 662 F.2d 340, 344–45 (5th Cir. 1981). Here, as the Parish points out, Harris's complaint contains no mention of her race and contains no allegation of any race-based discrimination. In opposition, Harris asserts for the first time that she was sexually harassed and discriminated against because she is an African American female. There is not a single fact alleged in the complaint to support a claim of race-based discrimination. Even if the threadbare assertion in her opposition were grafted onto the complaint, it would be insufficient to state a plausible claim for racial discrimination.

Further, while § 1981 can serve to remedy discrimination by private employers in private employment contracts, the United States Fifth Circuit Court of Appeals has held that it does not provide an independent cause of action against local government entities. Oden v. Oktibbeha Cty., Miss., 246 F.3d 458, 462–63 (5th Cir. 2001). As the Parish points out, LeBlanc has been dismissed from this lawsuit and only Jefferson Parish remains as a defendant. Harris has put forward no basis to hold the Parish liable under §1981.

Accordingly, to the extent Harris is attempting to plead a §1981 by mentioning the statute in her first paragraph though not listing §1981 as a separate, numbered cause of action, her §1981 claim must be dismissed.

*3. Title VII Time Bar*

Title VII requires that a plaintiff file suit within ninety days of receipt of a right-to-sue letter issued by the EEOC. <u>Nilsen v. City of Moss Point, Miss.</u>, 674 F.2d 379, 381 (5th Cir. 1982), <u>on reh'g</u>, 701 F.2d 556 (5th Cir. 1983), and <u>on reh'g</u>, 701 F.2d 556 (5th Cir. 1983) (citing 42 U.S.C. § 2000e-5(f)(1)). "This requirement to file a lawsuit within the ninety-day limitation period is strictly construed." <u>Taylor v. Books A Million, Inc.</u>, 296 F.3d 376, 379 (5th Cir. 2002). When the plaintiff has failed to allege the specific date that she received the right-to-sue letter, the court will presume receipt a maximum of seven days after the letter was mailed. <u>Id.</u>

Here, Harris referred to receiving a right-to-sue letter in her complaint, but she did not allege the date she received it. In opposition to the motion to dismiss, she attaches the right to sue letter, which was issued on November 5, 2018. Presuming she received the letter seven days later, Harris had until February 10, 2019 to file her complaint. She did so on February 6, 2019.

The Parish argues that the complaint was nonetheless untimely because the amended complaint naming Jefferson Parish was not filed until months later on September 20, 2019. As the Parish points out, when a timely filed Title VII lawsuit is later dismissed, the original lawsuit does not toll the ninety-day period for the Title VII claim. <u>Price v. Digital Equip. Corp.</u>, 846 F.2d 1026, 1027 (5th Cir. 1988).

But this case is not like the <u>Price</u> matter where the plaintiff's original lawsuit was dismissed for want of prosecution, and seven months later the plaintiff filed nearly an identical lawsuit. Here, Harris timely filed her Title VII claims on February 6, 2019, but improperly named Rivarde as the defendant. Although it took her months to correct the error, eventually, on July 18, 2019, the court granted Harris's motion for leave to amend her complaint to name Jefferson Parish and dismissed Harris's claims against Rivarde. Although Harris's corrected pleading naming Jefferson Parish

was not entered into the record until September 20, 2019, the court cannot construe its July 18,

2019, order, which both dismissed Rivarde and granted Harris leave to amend and name Jefferson

Parish as a defendant, as dismissing Harris's entire lawsuit such that the tolling question is even

triggered. Instead, this one lawsuit has been pending since February 6, 2019, when it was timely

filed.

The Parish's motion to dismiss Harris's Title VII claims as untimely is denied.

### 4. *Disparate Treatment Claims*

Title VII provides that

> It shall be an unlawful employment practice for an employer--
> **. . .**to fail or refuse to hire or to discharge any individual, or otherwise to
> discriminate against any individual with respect to his compensation, terms,
> conditions, or privileges of employment, because of such individual's race, color,
> religion, sex, or national origin;

42 U.S.C. § 2000e-2(a)(1). Where the plaintiff relies on circumstantial evidence of

discrimination, then the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411

U.S. 792, 802 (1973), applies. Id.  Under that framework, the plaintiff must first establish a *prima*

*facie* case of discrimination. Russell v. McKinney Hosp. Venture, 235 F.3d 219, 222 (5th Cir.

2000). In a disparate treatment case, "to establish a *prima facie* case of discrimination on the basis

of race or national origin, a plaintiff must show he or she was: (1) a member of a protected class;

(2) qualified for the position held; (3) subject to an adverse employment action; and (4) treated

differently from others similarly situated." Abarca v. Metro. Transit Auth., 404 F.3d 938, 941 (5th

Cir. 2005). If the plaintiff establishes a *prima facie* case of discrimination, "the employer must

respond with a legitimate, nondiscriminatory reason for its decision." Russel, 235 F.4d at 222.

"This burden on the employer is only one of production, not persuasion, involving no credibility

assessments." Id.  "If the defendant meets its burden, the presumption of discrimination created by

the *prima facie* case disappears, and the plaintiff is left with the ultimate burden of proving discrimination." Sandstad, 309 F.3d at 897. "The plaintiff, who always has the ultimate burden, must then 'produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination.'" Outley v. Luke & Assocs., Inc., 840 F.3d 212, 216 (5th Cir. 2016) (quoting Burton v. Freescale Semiconductor, Inc., 798 F.3d 222, 233 (5th Cir. 2015)). Louisiana's employment discrimination statute is similar in scope to Title VII, so courts routinely look to federal law when determining whether a plaintiff has stated a claim for discrimination under Louisiana law. Wyerick v. Bayou Steel Corp., 887 F.2d 1271, 1274 (5th Cir. 1989).

At the motion to dismiss stage, the plaintiff is not required to make a showing of each prong of the *prima facie* test for disparate treatment. Raj v. Louisiana State Univ., 714 F.3d 322, 331 (5th Cir. 2013). Instead, the plaintiff must plead facts that tend to show that the defendant took an adverse employment action against the plaintiff because of her protected status, raising her right to relief above the speculative level. Id.

Here, the Parish argues that Harris's claims of discrimination are "bald and conclusory legal assertions." The Parish submits that Harris merely states that she was treated differently from her male counterparts and was subject to a hostile atmosphere and sexual harassment. The Parish further argues that Harris has failed to plead facts showing that she was treated differently from her male counterparts because she has not sufficiently identified other similarly situated employees. See Wyvill v. United Companies Life Ins. Co., 212 F.3d 296, 304 (5th Cir. 2000) (considering an age discrimination claim and requiring the plaintiff to show that his employer "gave preferential treatment to a younger employee under "nearly identical" circumstances").

In opposition, Harris recites facts from her complaint: that she was subjected to a pattern of sexual harassment by LeBlanc when he placed her on his lap and grabbed her breasts, made

sexual comments and jokes, propositioned money for sexual acts and to clean his house in the nude, and spreading rumors about her sexual orientation and her liking women. Elaborating on her allegation that LeBlanc put $100 bills in her face, she asserts that LeBlanc "threw money" in her face and told her he could buy her anything she wanted.

It is unclear to the court whether Harris is asserting a disparate treatment claim other than her claim for sexual harassment and constructive discharge. If the adverse employment action she alleges is "being exposed to sexual harassment" or "being constructively discharged," that alleged discrimination is discussed in the sections below. If there is some other adverse employment action that Harris seeks to challenge through a disparate treatment claim, she has not alleged what the adverse employment action was with any particularity. See Thompson v. City of Waco, Texas, 764 F.3d 500, 503 (5th Cir. 2014) (noting that an "adverse employment action" under Title VII is "an employment decision that affects the terms and conditions of employment"). Nor has she alleged how, as to such other adverse employment action, she was treated differently from male employees in nearly identical circumstances. See Wyvill, 212 F.3d at 304.

Accordingly, to the extent Harris is asserting a disparate treatment claim under Title VII or Louisiana law other than her claim for sexual harassment or constructive discharge, the court finds she has failed to state a claim and it is dismissed. To the extent Harris has merely asserted "disparate treatment" as a catchall for her claims of sexual harassment and constructive discharge, the court addresses those theories below.

5. *Sexual Harassment/Hostile Work Environment Claims*

Four elements are required to establish a hostile-work-environment claim: "(1) that the employee belongs to a protected class; (2) that the employee was subject to unwelcome sexual harassment; (3) that the harassment was based on [a protected characteristic]; and (4) that the

harassment affected a 'term, condition, or privilege' of employment." E.E.O.C. v. Boh Bros. Const. Co., 731 F.3d 444, 453 (5th Cir. 2013) (quoting Lauderdale v. Texas Dep't of Criminal Justice, Institutional Div., 512 F.3d 157, 162–63 (5th Cir. 2007)). Harassment affects a "term, condition, or privilege" of employment when it is so severe or pervasive that it alters the conditions of employment and "create[s] an abusive working environment." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986) (quoting Henson v. City of Dundee, 682 F.2d 897, 904 (11th Cir. 1982)). In determining "whether a hostile work environment existed, a court must consider 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Moore v. United Parcel Serv., Inc., 150 F. App'x 315, 319 (5th Cir. 2005) (quoting Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002)). An isolated offensive utterance is not sufficient to demonstrate a hostile work environment due to a protected characteristic. Weller v. Citation Oil & Gas Corp., 84 F.3d 191, 194 (5th Cir. 1996) (quoting DeAngelis v. El Paso Mun. Police Officers Ass'n, 51 F.3d 591, 595 (5th Cir. 1995)) ("[T]he 'mere utterance of an . . . epithet which engenders offensive feelings in an employee' is insufficient, without more, to support Title VII liability."); see Long v. Eastfield Coll., 88 F.3d 300, 309 (5th Cir. 1996) (holding that an offensive joke concerning condoms told in the plaintiff's presence was insufficient to establish a hostile work environment claim on the basis of sex); Martin v. Winn–Dixie Louisiana, Inc., 132 F. Supp. 3d 794, 822–23 (M.D. La. 2015) (holding that plaintiff could not survive summary judgment when her harassment claims were based on two stray remarks: being offered candy though she was a diabetic and being told that she could not do her job and be pregnant); Jones v. Cont'l Cuisine, Inc., 353 F. Supp. 2d 716, 720–21 (E.D. La. 2004) (finding the plaintiff had not established a  race based hostile work environment where the only evidence to

support a racially hostile work environment was a manager's alleged use of the "n word" during one meeting). A hostile work environment must be found to "be both objectively and subjectively offensive." Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998).

The Parish argues that Harris's sexual harassment claims should be dismissed because the harassment she complains of is not actionable. The Parish submits that the alleged harassment "consists primarily of sexually suggestive remarks and the alleged grabbing of plaintiff's breasts, which allegations are not severe or pervasive." The Parish notes that Harris alleges she was able to refuse the sexual advances and that LeBlanc has been dismissed from this lawsuit. The Parish argues that far more egregious conduct than that alleged by Harris has been found insufficient to establish a claim for sexual harassment. For example, it cites Shepherd v. Comptroller of Public Accounts of State of Texas, where the Fifth Circuit affirmed the summary judgment issued by the district court where the plaintiff alleged she had been harassed for almost two years by a co-worker who made remarks like "your elbows are the same color as your nipples" and "you have big thighs" and where he touched her arm on several occasions, "rubbing one of his hands from her shoulder down to her wrist while standing beside her" and during two meetings, patted his lap and remarked "here's your seat."168 F.3d 871, 872-73 (5th Cir. 1999). The court found the co-worker's comments "boorish and offensive," but not severe or physically threatening and found that the conduct would not "interfere unreasonably with a reasonable person's work performance." Id. at 874. The Parish also cites Barnett v. The Boeing Company, where the Fifth Circuit also affirmed summary judgment for the employer where the plaintiff's supervisor called her at home on at least three occasions, expressed a romantic interest in her to other co-workers and engaged in "inappropriate behavior, namely leering, sexually suggestive comments and unwanted touching." 306 F. App'x 875, 876 (5th Cir. 2009). The court found the plaintiff had failed to establish that the

supervisor's conduct was severe or pervasive. Id. Similarly, the Fifth Circuit affirmed summary judgment in Hockman v. Westward Communications, LLC, finding the supervisor's conduct insufficient to establish a hostile work environment where plaintiff alleged that "(1) he once made a remark to [plaintiff] about another employee's body, (2) he once slapped her on the behind with a newspaper, (3) he "grabbed or brushed" against [plaintiff's] breasts and behind, (4) he once held her cheeks and tried to kiss her, (5) he asked [plaintiff] to come to the office early so that they could be alone, and (6) he once stood in the door of the bathroom while she was washing her hands." 122 F. App'x 734, 745 (5th Cir. 2004). In Hockman, the Fifth Circuit contrasted the facts alleged with those in Farpella-Crosby v. Horizon Health Care where the defendant's conduct was considered frequent and severe enough to sustain a jury verdict for the plaintiff. In Farpella-Crosby,

> [Plaintiff's supervisor] repeatedly commented that he "knew what she liked to do" because she had seven children and that she "must not have a television." At a baby shower held at the facility for another employee, [he] joked to the group that [plaintiff] "doesn't know how to use condoms." [He] also frequently inquired about [plaintiff's] sexual activity. He would often question her [a co-worker] about where they had been the night before (while off duty), whether they had taken men home, and whether they "got any." [Plaintiff and the co-worker] both testified that Blanco made similar comments two or three times a week. [Plaintiff] testified that the comments were so frequent that she could not possibly remember each instance. [The supervisor] threatened [plaintiff] with her job on numerous occasions when she asked him to stop making these comments.
> On one occasion, after [she] had eaten lunch in her office with a boyfriend, [the supervisor] said that "when you open the door [to the office], the smell of fish just hits you in the face. You shouldn't be doing that kind of thing at work." . . . [The Supervisor] essentially admitted that he did question [plaintiff] about her personal life, but claimed that he did so because he believed the lack of sleep resulting from sexual activity could affect her work performance.

97 F.3d 803, 805 (5th Cir. 1996).

The Parish also argues that the allegations in the complaint fail to establish quid pro quo harassment because Harris cannot show that she suffered a tangible employment action that

resulted from her acceptance or rejection of her supervisor's sexual advances. <u>Casiano v. AT&T</u> <u>Corp.</u>, 213 F.3d 278, 283 (5th Cir. 2000) (explaining that in a "quid pro quo" case "the court must determine whether the tangible employment action suffered by the employee resulted from his acceptance or rejection of his supervisor's alleged sexual harassment").

In opposition, Harris elaborates on the allegations of her complaint, asserting that LeBlanc groped her and propositioned sex weekly and that when he placed her on his lap, he intended that she would feel his penis on her bottom. She asserts that when she complained of harassment and was promised she and LeBlanc would be separated, she still found she was working overlapping shifts with LeBlanc. She points out the harassment caused her to have panic attacks that "often" lead to the ambulance being called to bring her to the hospital from her job. She insists that the harassment she experienced rises to the level required by law.

The court acknowledges the case law cited by the Parish in which sexual harassment claims were dismissed. But all were decided on summary judgment, not at the motion to dismiss stage. The inquiry is fact specific and dependent on the circumstances of each case. The details regarding the frequency and of the alleged touching and comments, the atmosphere and policies in place at Rivarde, and the actions or inactions of higher-level supervisors in response to Harris's complaints have yet to be fully discovered.[2] While Harris may ultimately be unable to establish a hostile work environment claim, at this stage, the court finds her allegations are sufficient to raise her right to relief above a speculative level.

---

[2] <u>See</u> <u>Shepherd v. Comptroller of Pub. Accounts of State of Texas</u>, 168 F.3d 871, 874–75 (5th Cir. 1999) (noting factors considered in assessing hostile work environment include the frequency of comments, the severity and frequency of the touching, an atmosphere of sexual inequality, and the existence and enforcement of sexual harassment policies).

As to Harris's sexual harassment/hostile work environment claims under Title VII and Louisiana's employment discrimination statute, the Parish's Motion to Dismiss is denied.

6.  *Constructive Discharge under Title VII*

To establish a claim for constructive discharge, the plaintiff must show that "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." Jurgens v. E.E.O.C., 903 F.2d 386, 390 (5th Cir. 1990) (quoting Bourque v. Powell Elec. Mfg. Co., 617 F.2d 61, 65 (5th Cir. 1980)). To determine whether a reasonable employee would feel compelled to resign, courts consider:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status].

Brown v. Kinney Shoe Corp., 237 F.3d 556, 566 (5th Cir. 2001). "Constructive discharge requires a greater degree of harassment than that required by a hostile environment claim." Id. "Discrimination alone, without aggravating factors, is insufficient for a claim of constructive discharge, as is a discriminatory failure to promote." Id. For example, summary judgment was granted on a plaintiff's constructive discharge claim where the plaintiff merely submitted a declaration asserting that his employer "increased its adverse treatment to the extent that my health was affected and I was subjected to severe emotional distress on a daily basis." Hypolite v. City of Houston, Tex., 493 F. App'x 597, 608 (5th Cir. 2012). The plaintiff presented no evidence of specific instances of hostile or unfair treatment, which the court found insufficient to establish the aggravating factor of "badgering, harassment, or humiliation." Id.

Here, the Parish argues that Harris's complaint does not contain sufficient facts to state a constructive discharge claim. Harris opposes. She says that after informing three supervisors of

the harassment she had been experiencing and being assured she would have no more contact with LeBlanc, she found herself alone at work with him making her fearful, and resulting in another panic attack. She insists that she was terrified to go to work every day and that she could no longer tolerate going to work for fear of being harassed by LeBlanc.

As with the hostile work environment claim, the cases cited by the Parish concern summary judgment, not dismissal on the pleadings alone. While Harris may be unable to prove facts that establish constructive discharge, at this stage her allegations are enough to raise her right to relief beyond a speculative level. Although Harris has not alleged demotion or reduction in salary or job responsibilities, she does allege the aggravating factor of intentional sexual harassment. Discovery has yet to be conducted into the circumstances surrounding Harris's reporting of the harassment and the response.

As to Harris's constructive discharge claims under Title VII and Louisiana's employment discrimination statute, the Parish's Motion to Dismiss is denied.

7. *Retaliation under Title VII and La. Rev. Stat. § 23:332(A)(1)*

"To establish a *prima facie* case of retaliation, a plaintiff must show that (1) she participated in a Title VII protected activity, (2) she suffered an adverse employment action by her employer, and (3) there is a causal connection between the protected activity and the adverse action." Stewart v. Mississippi Transp. Comm'n, 586 F.3d 321, 331 (5th Cir. 2009). The adverse employment action must "have been materially adverse to a reasonable employee." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006).

The Parish argues that Harris's rejection of sexual advances does not constitute a protected activity under Title VII. But as Harris points out in her opposition, the protected activity she alleges here is complaining to multiple supervisors about the sexual harassment she alleges she was

experiencing at the hands of LeBlanc. Harris asserts that the adverse employment action is that her supervisors kept her on the schedule with shifts that overlapped those of LeBlanc, even though they knew the mental anguish and possible physical danger she could be in. The Parish responds that these claims of retaliation were asserted in a conclusory fashion. The Parish points out that Harris does not allege in her complaint that her supervisors placed her on an overlapping shift with LeBlanc. The Parish insists that her supervisors changed LeBlanc's employment schedule from December 30, 2017 until she resigned on January 17, 2018 so that they were on different shifts.

In her amended complaint, Harris alleges that when she reported the alleged sexual harassment to Bruno, she was told that Bruno did not know LeBlanc to harass women and no action was taken. She alleges that when she reported the alleged harassment to Junker and Trossclair on December 28, 2017, she was assured LeBlanc's schedule would be changed. She alleges that two days later, LeBlanc was waiting for her when she arrived at work "and he was the only supervisor on the schedule." She does not allege that she and LeBlanc had schedules overlapping on any other day after that. She does not allege any acts of harassment that specifically occurred between December 28, 2017, and January 17, 2018, when she alleges she was constructively discharged. To the extent her allegation that LeBlanc was scheduled as supervisor during her shift on December 30, 2017, could be interpreted as an adverse employment action, there are no allegations to suggest a causal connection between her complaints of sexual harassment and the employment action. The court finds that Harris's alleged retaliation claim is speculative at best, and certainly does not rise to the level of plausible.

Accordingly, Harris's claim for retaliation under Title VII and La. Rev. Stat. § 23:332(A) is dismissed.

8. *Criminal Action*

Harris purports to seek damages under La. Rev. Stat. § 14:43.1.1. This statute defines and provides criminal penalties for the misdemeanor of sexual battery. The statute does not provide for a private right of action.

As the Parish points out, "[u]nder Louisiana law, criminal statutes may provide the standard of care in a tort action when the other fundamental elements of a tort (duty of care, damages) are present. Alone, however, a criminal violation will not create tort liability." Louisiana v. Guidry, 489 F.3d 692, 699 (5th Cir. 2007). The Parish argues that Harris does not allege any accompanying civil causes of action that could utilize the criminal statute to establish the duty of care. It adds that LeBlanc has not been prosecuted under the cited statute. Thus, the Parish argues any cause of action under § 14:43.1.1 should be dismissed.

In opposition, Harris argues that she has asserted that LeBlanc, "under cover of the Parish," committed a tort against her by groping her breasts and making her feel his penis when he placed her on his lap. She argues that LeBlanc had a duty not to assault her and to treat her respectfully as a citizen. She submits that she has suffered an extraordinary amount of mental anguish as a result. She insists the criminal action should stand.

Harris has failed to establish a basis for civil liability under a criminal statute. She may be arguing that the criminal statute should inform the standard of care applicable to other causes of action she has asserted in this case. The Parish does not dispute that principle. However, because there is no independent private right of action pursuant to La Rev. Stat. §14:43.1.1, Harris's claim for damages thereunder is dismissed.

9. *Intentional Infliction of Emotional Distress*

To prove her claim for intentional infliction of emotional distress ("IIED") under Louisiana law, the plaintiff must establish "(1) that the conduct of the defendant was extreme and outrageous;

(2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." White v. Monsanto Co., 585 So. 2d 1205, 1209 (La. 1991). The Louisiana Supreme Court has explained that "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Id. Thus, in the employment context, courts have held that "[c]onduct in the workplace, even if calculated to cause some degree of mental anguish, will rarely be so severe that it will rise to the level of 'outrageous conduct.'" Barber v. Marine Drilling Mgmt., Inc., No. CIV.A. 01-1986, 2002 WL 237848, at *8 (E.D. La. Feb. 15, 2002).

For example, the Parish cites Bradford v. Ins. Management Administrators of Louisiana, Inc., where the district court granted summary judgment and dismissed the plaintiff's claim for IIED. No. CIV.A. 05-1504, 2007 WL 2480358, at *7 (W.D. La. Aug. 30, 2007). The plaintiff alleged that a co-worker she believed to have supervisory authority made rude and sexual comments about her physical appearance; tried to set her up with customers; continually made dirty comments; and constantly commented on women's physical appearances, including a comment referring to another female employee's chest as the "Himalayas." Id. at *1. She alleged that the harassment and retaliation caused the inability to sleep, frequent headaches, upset stomach, and fatigue. Id. at *7. The court found that "[n]one of the conduct alleged by [the plaintiff] was so outrageous as to go beyond all possible bounds of decency. A few comments with sexual overtones are not enough to satisfy the requirement of being 'extreme in degree' or 'outrageous,'

and certainly would not qualify as 'atrocious' or 'utterly intolerable.'" Id. The court also found no evidence that the supervisor intended to cause emotional distress. Id.

Most of the other cases cited by the Parish do not involve sexual harassment,[3] but nonetheless show that offensive conduct in the workplace does not necessarily rise to the level of extreme and outrageous required to state an IIED claim. E.g., Tate v. Louisiana Department of Transportation and Development, Civ. A. No. 11-1212, 2013 WL 796015, at *20-21 (E.D. La. Mar. 4, 2013) (dismissing plaintiff's claim for intentional infliction of emotional distress as failing to rise to a level that a reasonable person could not endure where plaintiff alleged that a dog collar had been taped to her door; that her lock had been glued; that she had received physically threatening emails; that when she reported performance issues of white employees they would respond with insubordination, racial insults, and harassment with the full knowledge and support of management; that an unjustified public investigation was initiated against her after she cited a white subordinate on a performance issue and that the investigation was not handled in accordance with the agency's rules and procedures while investigations of white employees were handled swiftly and professionally; and that she was accused of committing payroll fraud because of her race and gender and in retaliation); Almerico v. Dale, 05-749 (La. App. 5 Cir. 3/28/06), 927 So. 2d 586, 590 (affirming the trial court's dismissal of the plaintiff's intentional infliction of

---

[3] The only other cases cited by the Parish that involved sexual harassment and touching are not comparable to the present one. In one the plaintiff had not suffered severe emotional distress but merely felt humiliated and angry. Smith v. Amedisys Inc., 298 F.3d 434, 449-50 (5th Cir. 2002). Here, plaintiff alleges that she suffered panic attacks that on at least one occasion required that she be transported from work to the hospital. In the other, the plaintiff's IIED claim focused on a female judge's reporting of a male judge's alleged sexual harassment of the plaintiff even though the female judge knew plaintiff had not reported the harassment because she feared for her physical and job safety. Griffith v. Louisiana, 808 F. Supp. 2d 926, 936 (E.D. La. 2011). Plaintiff alleged that after she testified against the male judge, he kissed her forehead with the intent to intimidate her and then the female judge created an intolerable work environment for her by accusing her of misplacing checks, exceeding her authority, and throwing checks at her. Id. The court found the conduct of the judges was not extreme and outrageous. Id. The allegations in Griffith bear no similarity to the facts alleged by Harris here.

emotional distress claim on an exception of no cause of action where plaintiff alleged he developed a psychological disorder requiring medical treatment because of continuous harassment and humiliation by calling him away from planning his father's funeral, placing him on leave during an investigation when other employees had not been placed on leave, assigning him to the position of Operations Commander but requiring him to share a small office, failing to provide him with a dress uniform, delaying the return of his police car until almost two months after he was reinstated, and requiring him to fill in for the nighttime supervisor).

Harris opposes and, without citing any case law, insists that the allegations of the complaint rise to the level required to state a claim for intentional infliction of emotional distress. She does not address why the conduct of LeBlanc rises to the level of outrageous or extreme. Instead, she argues that LeBlanc saw how she would lose her breath, would start to sweat from heart palpitations, and would require immediate medical attention, yet he would continue to approach her with sexual comments and "gropings." She insists that no case is comparable.

In reply, the Parish points out that Harris's complaint does not allege that LeBlanc saw how she would lose her breath when he "harassed" her. Indeed, her complaint merely alleges in a conclusory fashion that LeBlanc knew or should have known that his actions would result in severe emotional distress.

The court finds that Harris's conclusory allegations do not plausibly establish that LeBlanc knew or should have known that his actions would cause severe emotional distress. Without this element she cannot establish a claim. Even if Harris amended her complaint to allege LeBlanc's knowledge of the severe emotional distress she suffered as a result of his actions, Harris has failed to cite any case law that would support finding that LeBlanc's conduct rises to the level of extreme and outrageous as required to sustain a claim for IIED. Instead, Harris has alleged offensive

conduct that might, upon further discovery, be sufficient to state a claim for a hostile work environment as discussed above, but which simply fails to reach the standard of extreme, outrageous, atrocious, or utterly intolerable.

Accordingly, Harris's claim for IIED is dismissed.

*10. Negligent Hiring, Retention, and Supervision*

Finally, the Parish argues that Harris has failed to state a claim for negligent hiring, retention, and supervision. Citing <u>Monell v. Department of Social Services of City of New York</u>, the Parish insists that a municipality can only be held liable when the plaintiff is injured by the government's policy or custom. In <u>Monell,</u> the United States Supreme Court held:

> that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

436 U.S. 658, 694 (1978). "Under certain circumstances, however, a municipality may incur § 1983 liability for its employees' acts when a municipal policy of hiring or training causes those acts." <u>Benavides v. Cty. of Wilson</u>, 955 F.2d 968, 972 (5th Cir. 1992). To establish liability under this theory, the plaintiff "must show (1) the training or hiring procedures of the municipality's policymaker were inadequate; (2) the municipality's policymaker was deliberately indifferent in adopting the hiring or training policy; and (3) the inadequate hiring or training policy directly caused the plaintiff's injury." <u>Id.</u>

The court finds it curious that after arguing that Harris has failed to allege a §1983 claim, the Parish now invokes the standard for municipal liability under § 1983. As noted above, nowhere in the complaint does Harris invoke § 1983. Her cause of action complaining of negligent hiring, retention, and supervision refers to the Parish's duty to provide a safe workplace and to investigate

complaints of sexual harassment. In opposition to the Parish's motion to dismiss, she too cites the standard for municipal liability under § 1983, and asserts for the first time that the Parish did not have a sexual harassment policy.

Even if the cause of action complaining of negligent hiring, retention, and supervision could be read as attempting to state a claim under § 1983, it is unclear what rights Harris alleges were violated. Section 1983 provides a cause of action against municipalities, state and local officials, and other defendants who acted under state law and thereby deprived the plaintiff of any rights, privileges, or immunities secured by the Constitution and laws of the United States. Harris's complaint is devoid of any alleged constitutional violations.

Moreover, if the court interprets the cause of action complaining of negligent hiring, retention and supervision as alleging a § 1983 claim for violation of a right secured by the Constitution and laws of the United States as both parties now seem to urge, the claim must still be dismissed. Although Harris now claims in her opposition that the Parish did not have a sexual harassment policy in place and did not conduct any sexual harassment training, these allegations do not appear in the complaint.

Harris has raised no other legal basis for maintaining her claim for negligent hiring, retention and supervision. Accordingly, this cause of action must be dismissed.

## Conclusion

For the foregoing reasons, the Motion to Dismiss is GRANTED in part and DENIED in part as follows:

1. Harris's §1981 claim is dismissed.

2. Harris's claim for retaliation under Title VII and La. Rev. Stat. § 23:332(A) is dismissed.

3. Harris's claim for damages under La Rev. Stat. §14:43.1.1 is dismissed.

4.  Harris's claim for IIED is dismissed.

5.  Harris's claim for negligent hiring, retention, and supervision is dismissed.

6.  As to Harris's sexual harassment/hostile work environment and constructive discharge claims under Title VII and Louisiana's employment discrimination statute, the Parish's Motion to Dismiss is DENIED.


New Orleans, Louisiana, this 27th day of January, 2020.

Janis van Meerveld<br>
United States Magistrate Judge